## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CAROL BARDONI,

       Plaintiff,

v.                                                    Case No. 04-CV-72918-DT

UNITED STATES OF AMERICA,

       Defendant.

_____/

### OPINION AND ORDER GRANTING DEFENDANT'S "MOTION FOR SUMMARY JUDGMENT" AND DENYING DEFENDANT'S "MOTION TO STRIKE PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT"

This premises liability action is brought against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680, and comes before the court on Defendant's April 11, 2005 "Motion for Summary Judgment." Plaintiff filed a written response to Defendant's motion on April 26, 2005, after which Defendant filed its May 4, 2005 "Motion to Strike Plaintiff's Response to [its] Motion for Summary Judgment." The court finds the matter is adequately submitted on the briefs and that a hearing on these motions is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons set forth below, the court will grant Defendant's motion for summary judgment but deny Defendant's motion to strike Plaintiff's response.

### I. BACKGROUND

This premises liability action centers on whether Defendant had a duty to protect Plaintiff, an invitee, from a condition of uneven pavement surrounding a manhole cover at the parking lot for the United States Post Office in Monroe, Michigan. Plaintiff alleges that on May 6, 2003, she parked her vehicle at the post office parking lot, exited, took

several steps, and stumbled on uneven pavement created by a manhole cover.  (Pl.'s Compl. at ¶¶ 3, 5.)  Plaintiff seeks damages for medical costs, lost wages, pain, suffering, emotional distress, and loss of normal enjoyment of life.

On May 6, 2003, Plaintiff was visiting the post office to mail a package.  (Pl.'s Dep. at 10-11.)  After parking and exiting her vehicle, and while carrying her purse a box to be mailed, Plaintiff took several steps and tripped over uneven pavement surrounding the manhole cover, falling and fracturing her ankle.  (*See* Pl.'s Dep. at 14-18.)  The manhole cover was about one inch below grade and outlined with yellow paint.  (*See* Pl.'s Resp. Ex. 2; Def.'s Mot. Exs. 2a-2c (photos of manhole cover).)

Plaintiff testified that she was not looking at the ground while she was walking prior to the accident and that she was holding a box, looking at the parking lot entrance to see if any cars were approaching.  (Pl.'s Dep. at 15, 17-18.)  After falling, Plaintiff went into the post office to mail her box and returned to her vehicle crossing back over the manhole cover without tripping on the uneven depressed pavement.  (*Id.* at 19.)

Prior to the accident, Plaintiff had visited this particular post office once every couple months to purchase stamps.  (*Id.* at 11.)  She testified that, six months to a year preceding the accident, she had a postal box at the post office where she received her mail for approximately one year.  (*Id.* at 13.)

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories,

2

admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'"). A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from the admissible evidence presented in a manner most favorable to the nonmoving party. *Dunigan v. Noble*, 390 F.3d 486,492 (6th Cir. 2004) ("we must determine 'not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed.'") The court does not weigh the evidence to

3

determine the truth of the matter, but must determine if the evidence produced creates a genuine issue for trial.  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

## III.  DISCUSSION

### A.  Defendant's Motion to Strike

As an initial matter, the court will deny Defendant's motion to strike Plaintiff's response to its motion for summary judgment.  Defendant moves to strike Plaintiff's response for including evidence for inadmissible purposes under Federal Rule of Evidence 407.  Rule 407 governs the admissibility of evidence related to subsequent remedial measures.  It provides:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction.  This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Fed. R. Evid. 407.

In Plaintiff's statement of facts, she states that "[a]fter Mrs. Bardoni suffered her injury, Defendant undertook steps to repair the depressed area of pavement surrounding the manhole."  (Pl.'s Resp. at 4.)  Plaintiff also included deposition testimony and a copy of a contract for the reconstruction of a ten foot area around the manhole.  (Pl.'s Resp. Ex. 1; Brandon Dep. at 30.)  Defendant argues that because this evidence is inadmissible to show negligence or culpable conduct and the United States does not dispute ownership or control over the parking lot, the court should not consider this evidence in Plaintiff's response and it should be stricken.

4

The court, however, need not grant Defendant's motion because the legal analysis applied by the court under Rule 56 already requires the court to consider *admissible* evidence.  *See* Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits [related to a motion for summary judgment] shall be made on personal knowledge, shall set forth such facts *as would be admissible in evidence,* and shall show affirmatively that the affiant is competent to testify to the matters stated therein.") (emphasis added); *Wiley v. United States,* 20 F.3d 222, 225-26 (6th Cir.1994).  Accordingly, Defendant's motion to strike will be denied.

## B.  Defendant's Summary Judgment Motion

Under Michigan law, "a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land."  *Lugo v. Ameritech Corp.,* 629 N.W.2d 384, 386 (Mich. 2001).  This duty, however, does not extend to "open and obvious" dangers.  *Id.* Open and obvious dangers are ones that are "so obvious and apparent that an invitee may be expected to discover them himself."  *Williams v. Cunningham Drug Stores, Inc.*, 429 Mich. 495, 500 (Mich. 1988).

The analysis of whether a condition is open and obvious "does not revolve around whether steps could have been taken to make the danger more open or more obvious; rather, [the] question is whether the danger, as presented, is open and obvious."  *Novotney v. Burger King Corp.*, 499 N.W.2d 379, 381 (Mich. Ct. App.1993). The standard used to determine whether a condition is open and obvious is that of an objective reasonable person with ordinary intelligence.  *Id.*

5

Michigan courts recognize an exception to the open and obvious danger doctrine such that a duty may still exist notwithstanding the open and obvious hazard. *Lugo*, 629 N.W.2d at 386-87. "If special aspects of a condition make even an open and obvious risk unreasonably dangerous, then a premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Lugo*, 629 N.W.2d at 386. The Court in *Lugo* explained:

> [W]ith regard to open and obvious dangers, the critical question is whether there is evidence that creates a genuine issue of material fact regarding whether there are truly "special aspects" of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm, i.e., whether the "special aspect" of the condition should prevail in imposing liability upon the defendant or the openness and obviousness of the condition should prevail in barring liability.

*Id.* at 387.

The *Lugo* court also provided two examples of open and obvious dangers falling within this "special aspects" exception.

> An illustration of such a situation might involve, for example, a commercial building with only one exit for the general public where the floor is covered with standing water. While the condition is open and obvious, a customer wishing to exit the store must leave the store through the water. In other words, the open and obvious condition is *effectively unavoidable*. Similarly, an open and obvious condition might be unreasonably dangerous because of special aspects that impose an unreasonably high risk of severe harm. To use another example, consider an unguarded thirty foot deep pit in the middle of a parking lot. The condition might well be open and obvious, and one would likely be capable of avoiding the danger. Nevertheless, this situation would present *such a substantial risk of death or severe injury to one who fell in the pit that it would be unreasonably dangerous* to maintain the condition, at least absent reasonable warnings or other remedial measures being taken.

*Id.* (emphasis added).

6

Applying the open and obvious doctrine, the Court in *Lugo* held that an ordinary pothole in a parking was open and obvious, despite the plaintiff's contention that "moving vehicles in the parking lot were a distraction" that removed the pothole from the open and obvious doctrine. *Id.* at 389.   Furthermore, the Court explained "typical open and obvious dangers (such as ordinary potholes in a parking lot) do not give rise to... special aspects." *Id.* at 388.   Accordingly, the court finds that Defendant owed no duty of care to Plaintiff regarding the depression in the parking lot surrounding the manhole cover because it constitutes an open and obvious danger under Michigan law and it was not unreasonably dangerous.

This conclusion comports with a recent ruling by another judge in this district.   In *Medley v. United States*, No. 03-CV-73644-DT, the court was faced with substantially similar facts to those in the instant case and considered whether the open and obvious doctrine applied to the very same manhole cover at issue in this case.   In *Medley*, the plaintiff, like Mrs. Bardoni, filed a negligence action under the Federal Tort Claims Act against the United States after injuring her ankle when she stepped into a puddle covering the manhole cover in the Monroe Michigan Post Office parking lot.   *Medley*, No. 03-73644, Dec. 2, 2004 "Order Granting Defendant's Motion for Summary Judgment." (Dkt. # 43).   The *Medley* court determined that the slightly depressed manhole cover encountered in the Monroe Michigan post office parking lot was open and obvious, explaining:

> After considering the evidence in light most favorable to Plaintiff, this Court concludes that Plaintiff has not presented evidence that would remove her case from the open and obvious doctrine.  Similar to the pothole in *Lugo*, the slightly depressed manhole cover at issue here was an open and obvious danger.  That the manhole cover was located near a parking

7

> space and a puddle had accumulated over it during a rain storm do not
> present the sort of special aspects that "give rise to a <u>uniquely</u> high
> likelihood of har or severity of harm if not avoided . . . ."  *Lugo*, 629 N.W.2d
> at 387088 (emphasis added).

*Id.* at 7.

Finally, the court rejects Plaintiff's argument that the manhole conditions in the parking lot of the post office present the type of special aspects referred to in *Lugo.* Plaintiff maintains that "[t]he depressed pavement surrounding the manhole cover is similar to the standing water described in *Lugo*."  (Pl.'s Resp. at 6.)  The court does not agree.

The *Lugo* illustration relied on by Plaintiff involved a commercial building with *only one exit* for the general public where the floor was covered with standing water. The *Lugo* court indicated that even though this danger would fall with the open and obvious doctrine, it would be unreasonably dangerous because a customer *must pass* over the water if they wished to exit the building, rendering the obvious condition "effectively unavoidable."  *Id.* at 387.  There is no evidence from which a reasonable fact finder could conclude that the manhole cover in this case was effectively unavoidable. Unlike the example in *Lugo*, there is no indication that an invitee would have to pass over this relatively small area of the parking lot to enter the post office.

Plaintiff also relies on the unpublished opinion of *Brosseau v. Daykin Elec. Corp.*, No. 225880, 2002 WL 12755000 (Mich. Ct. App. June 7, 2002).  The open and obvious condition in *Brosseau* was a two to three foot, icy, and hard packed mound of snow blocking the only entrance to a commercial loading dock.  *Id.* at *3.  The Michigan Court of appeals upheld a jury verdict challenged on appeal concluding that "reasonable jurors

8

could have honestly reached different conclusions whether the mound of snow posed

an unreasonable risk of harm despite its open and obvious nature." *Id.*  After

concluding that the mound of snow was a classic example of an open and obvious

hazard under Michigan law, the court found that the plaintiff had presented sufficient

evidence to show that the "special aspects" exception to the open and obvious doctrine

applied.  *Id.*  The court explained:

> We acknowledge that the present case is a close one, but we believe that
> the evidence presented is substantially similar to the example provided in
> *Lugo* as to an open and obvious condition that has a special aspect
> because it is "effectively unavoidable."  The mound of snow in the present
> case blocked the only entrance to defendant's commercial loading dock
> where truck drivers were to make deliveries to defendant.  Unlike many
> other conditions that are open and obvious where a person could simply
> avoid the hazard by walking around it, there was no possibility of doing so
> in this case.

*Id.*

Here, unlike *Brousseau* where the injured party could not have entered the

loading dock without avoiding the snow mound, there is no evidence to show that

Plaintiff could not have entered the post office by using a different parking space.

Moreover, Plaintiff submits no evidence to establish that she could not have avoided the

open and obvious condition by walking around the manhole cover.

"[T]here is a legal duty to look where you are walking."  *Lugo,* 629 N.W.2d at 385.

The record evidence shows that Plaintiff could have watched where she was walking to

avoid the open and obvious uneven pavement, as she did when she returned to her

vehicle.  (*See* Pl.'s Dep. at 18-19.)  When applying the standard of a reasonably prudent

person, and construing the admissible evidence presented in a light most favorable to

Plaintiff as the non-moving party, no reasonable jury could conclude that the slightly depressed manhole cover and depressed pavement outlined in yellow paint triggered unique "special aspects" making it an unreasonably dangerous condition.  The open and obvious nature of the condition here precludes any recovery on Plaintiff's negligence claim.

## IV.  CONCLUSION

IT IS ORDERED that Defendant's "Motion for Summary Judgment" [Dkt. # 17] is GRANTED and Defendant's "Motion to Strike . . ." [Dkt. # 20] is DENIED.


 S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE


Dated:  June 10, 2005


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 10, 2005, by electronic and/or ordinary mail.


 S/Lisa G. Teets
Case Manager and Deputy Clerk
(313) 234-5522